## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## Tampa Division

**SALLY LETTERS,**                    **Case No.: 8:23-cv-01962**

*Plaintiff,*

**v.**

**JP MORGAN CHASE BANK, N.A.,**
**and WELLS FARGO BANK, N.A.,**

*Defendants,*
_____/

## PLAINTIFF'S FIRST AMENDED
## COMPLAINT WITH JURY DEMAND

1.      Plaintiff, SALLY LETTERS ("Ms. Letters" or "Plaintiff") by and through the undersigned counsel files her First Amended Complaint against Defendants, JP MORGAN CHASE BANK, N.A., ("Defendant" or "Chase") and WELLS FARGO BANK, N.A. ("Wells Fargo") for violations of the Electronic Funds Transfer Act, ("EFTA"), 15 U.S.C. § 1693, *et seq.* and other common law claims such of Breach of Contract.

2.      Plaintiff further alleges that Chase has committed violations of the Florida Consumer Collection Practices Act, Fla. Stat. §559.72 *et seq.* (the "FCCPA").

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

1

4.      Supplemental jurisdiction exists over Plaintiff's FCCPA and Breach of Contract claims under 28 U.S.C. § 1367.

5.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Hillsborough County, Florida.

## PARTIES

6.      Plaintiff is a natural person who, always relevant to this action, was a resident of Hillsborough County, Florida.

7.      Plaintiff is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

8.      Chase and Wells Fargo are each separately and individually, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

9.      Because Defendants conduct business within the State of Florida, personal jurisdiction is established.

10.     Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

11.     Chase is a "person" as defined by the FCCPA.

## STATUTORY FRAMEWORK AND PURPOSE

### The EFTA

12.     "The purpose of the Electronic Fund Transfers Act is to "provide a basic

2

framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." *See* 15 U.S.C. § 1693(b)(1988). Its primary objective "is the provision of individual consumer rights." *Id. See Curde v. Tri-City Bank Trust Co.*, 826 S.W.2d 911 (Tenn. 1992).

13.     The EFTA is aimed at reducing "potential fraud by mandating measures that could alleviate problems associated with conducting fund transfers without any human interaction." *See Foreman v. Bank of Am.*, 401 F. Supp. 3d 914, 923 (N.D. Cal. 2019).

14.     The "lack of a written record" and the "absence of any human contact" in electronic fund transfers were factors that "motivated Congress to pass the EFTA.") *See Id.* (citing *Kashanchi v. Texas Commerce Med. Bank*, 703 F.2d 936, 940–41 (5th Cir. 1983).

15.     Congress passed the EFTA because of its concern that electronic transactions were "much more vulnerable to fraud, embezzlement, and unauthorized use than the traditional payment methods." *See Id.* (citing H.R. Rep. No. 95–1315, at 2 (1978).

16.     "The legislation was designed to create rights for the consumer and help bring certainty to an era of banking which was fast becoming faceless, an era wherein banking could be conducted almost exclusively through machines.") *See Id.* (quoting *Spain v. Union Tr.*, 674 F. Supp. 1496, 1500 (D. Conn. 1987) (citing S. Rep. No. 95-915, at 3 (1978)).

17.     "EFTA requires a bank to investigate such disputed transactions, to notify the customer if it has verified the transactions as authorized, and to recredit the account if the withdrawals were unauthorized; failure to do so renders the bank liable to the customer for up to treble damages." *See Merisier v. Bank of Am., N.A.*, 688 F.3d 1203, 1204 (11th Cir. 2012).

18.     The EFTA requires that "[f]or each electronic fund transfer initiated by a consumer from an electronic terminal, the financial institution holding such consumer's account shall, directly or indirectly, at the time the transfer is initiated, make available to the consumer written documentation of such transfer." *See* 15 U.S.C. § 1693d(a). The EFTA also requires that "[i]f a financial institution, within sixty days after having transmitted to a consumer documentation . . . receives oral or written  notice in which the consumer" provides adequate notice of an error "the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days." *See* 15 U.S.C. § 1693f(a).

19.     "Under the EFTA, 'electronic fund transfer' essentially means any transfer of funds initiated through a computer terminal or telephone, where a financial institution is authorized to debit or credit an account. *See* 15 U.S.C. § 1693a(7). This includes point-of-sale transfers (i.e., debit card transactions), ATM transactions, direct deposits, and telephonic transfers. Id." *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 822 n.1 (8th Cir. 2013).

20.      An action pursuant to the EFTA must be commenced "within one year from the date of the occurrence of the violation." *See* 15 U.S.C § 1693m(g). With respect to a failure to investigate claim, "'[i]n light of the ten-day statutory period within which a financial institution must provide a response,' the statute of limitations begins to run ten days after the consumer provides the oral or written notice of the alleged error to the financial institution." *See Golden-Koether v. JPMorgan Chase Bank, N.A.*, No. 11-3586 (MLC), 2011 WL 6002979, at *2 (D.N.J. Nov. 29, 2011) (citing *Berenson v. Nat'l Fin. Servs., LLC*, 403 F. Supp. 2d 133, 145 (D. Mass. 2005)).

21.      "[T]he notice provision 'applies to each and every statement on which an unauthorized transfer appears." *See Trang v. JPMorgan Chase Bank,* 3:22-cv-01744-HZ at *11 (D. Or. Sep. 19, 2023).

22.      "With each new bank statement, Plaintiff [has] a new 60-day window in which to report the new unauthorized transfers on that statement to Defendant and trigger Defendant's obligation to investigate." *Id.* at *12.

### **The FCCPA**

23.      The FCCPA creates a private right of action under Fla. Stat. § 559.77.

24.      The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *See* Fla. Stat. § 559.55(8).

25.      The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property,

insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

26.      Consumer protection statutes are remedial in nature and should be liberally construed in favor of the public. *See Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990).

27.      The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

28.      The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *See* Fla. Stat. § 559.72. This language includes all unlawful attempts at collecting consumer debts by creditors and debt collectors alike. *See Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. 4th DCA 1976).

29.      The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." *See* Fla. Stat. § 559.72(9).

30.      "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." *See* Fla. Stat. §559.77(2).

**FACTUAL ALLEGATIONS COMMON TO EFTA CLAIMS AGAINST WELLS FARGO, EFTA CLAIMS AGAINST CHASE, and BREACH OF CONTRACT CLAIMS AGAINST CHASE**

31.     Ms. Letters is a victim of fraud.  The perpetrator happens to be her own daughter, Stacey Sanzone, who forged Plaintiff's signature on certain checks issued by Wells Fargo through two different Fidelity accounts, ordered Chase ATM cards to make withdrawals, and also used a fraudulently issued debit card totaling close to $26,000 in unauthorized transactions.

32.     The two Fidelity accounts are a Qualified Domestic Relations Order ("QRDO") and the other is a 401k retirement account. Plaintiff's accounts with Fidelity, with checks issued by Wells Fargo, were both primarily for personal, family and household use. Neither account was a business or commercial account.

33.     These unauthorized transactions occurred when Ms. Letters was incarcerated in Hillsborough County, which was from January 2, 2022 to July 19, 2022 ("Incarceration Period.") Therefore, some of the transactions were unable to be disputed by Ms. Letters due to the Incarceration Period.

34.     During the Incarceration Period, Ms. Letters communicated with her sister, Heather Wakefield, to make her sister aware of Stacy Sanzone's fraudulent activities. Eventually, Ms. Letters would grant a Power of Attorney to her sister so that she could dispute the continued unauthorized charges with Chase.

35.     These unauthorized transactions have made it difficult for Ms. Letters to meet certain monthly credit obligations on existing loans, which has caused her

to become delinquent and affected her credit worthiness and her reputation for making timely payments with current and prospective lenders.

36.     Ms. Letters and Stacy Sanzone lived together in an apartment in Hillsborough County until Ms. Letters' arrest. Ms. Letters' Incarceration Period began as the result of a dispute with her daughter's boyfriend, which lead to her daughter calling the police on Ms. Letters.

37.     At all times relevant to the complaint, Plaintiff had a checking account with Chase.

38.     Plaintiff's account with Chase was primarily for personal, family and household use. It was not a business or commercial account.

39.     The checking account with Chase received certain direct deposits such as monthly pension payments from "PSEG" of about $1,940.38 and employment benefit payments from "Lincoln Nat Lif Gp Ltd" of about $271.51. Based on information and belief, these monthly direct deposits totaling approximately $2,211.89 were withdrawn every month of Ms. Letters' Incarceration Period and have not been returned to her.

40.     On January 5, 2022, Stacy Sanzone deposited a check with a forged signature for $2,308.54 into the Chase checking account at an ATM; the January 5, 2022 check was made payable to Sally A. Sanzone which was Plaintiff's former married name.  This amount was not debited from Plaintiff's checking account until October 25, 2022 which is documented in a letter to Plaintiff and is partially

represented by the image below.

## Update:        We debited your account

Date of Inquiry:      10/22/2022
Return related to account ending in:    9319

Dear SALLY A LETTERS:

We debited $2,308.54 from your account on 10/25/2022.

A check you deposited or cashed was returned to us unpaid. The issuer of the check may have additional details about why the check wasn't paid. If this caused your account to be overdrawn, please bring it up to date as soon as possible.

41.     On January 10, 2022, Stacy Sanzone deposited a check with a forged signature for $8,000 into the Chase checking account at an ATM; the January 10, 2022 check was made payable to Sally A. Sanzone which was Plaintiff's former married name. On November 19, 2022, Chase received a "claim from Wells Fargo for a check for $8,000" which is documented in a letter to Plaintiff and is partially represented by the image below.



42.     On January 21, 2022, Stacy Sanzone deposited a check with a forged signature for $4,608.51 into the Chase checking account at an ATM; the January 21, 2022 check was made payable to Sally A. Sanzone which was Plaintiff's former married name. This amount was not debited from Plaintiff's checking account until October 25, 2022 which is documented in a letter to Plaintiff and is partially represented by the image below.



43.     The three fraudulent checks deposited by Stacy Sanzone into the Chase checking account, which withdrew funds from her QRDO and 401k Fidelity accounts serviced by Wells Fargo, totaled $14,917.05.

44.     The $8,000 check originated from the QRDO account while the $2,308.54 and $4,608.51 originated from the 401k account.

45.     After her Incarceration Period ended, Ms. Letters began contacting Chase and Wells Fargo to inform them about the fraud that occurred.

46.     On top of the fraudulent check withdrawals from the Fidelity account, Stacy Sanzone called Chase four separate times and requested a new debit card

each time, with no PIN# attached to it, so she could make additional fraudulent withdrawals and debit card purchases during Ms. Letters' Incarceration Period. The debit cards were requested or obtained on the following dates and carried the last 4 digits as follows: January 11, 2022 ending in 0149; January 26, 2022 ending in 6380; February 6, 2022 ending in 7801; and February 11, 2022 ending in 3240.

47.   Based on information and belief, the fraudulent debit card transactions and ATM cash withdrawals began occurring on or about January 16, 2022.

48.   On June 5, 2022, Heather Wakefield traveled from Pennsylvania to Florida so Ms. Letters could grant her Power of Attorney to dispute the fraudulent checks and ATM withdrawals; A redacted copy of the Power of Attorney is attached hereto as Exhibit "A."

49.   The Power of Attorney was executed at the direction of Chase while Ms. Wakefield was in Florida.

50.   On June 30, 2022, Chase sent multiple communications to an address where Ms. Letters was no longer residing regarding the ATM withdrawals and debit card transactions, most of which stated "[w]e will not be crediting certain transactions because you are responsible for any transactions that occur more than 60 days after we send the first statement on which these transactions appear, which was 03/16/2022."

51.   The fraudulent ATM withdrawals and debit card transactions during Ms. Letters' incarceration period total approximately $13, 271.34.

52.   During the Incarceration Period, Ms. Letters was evicted from her

apartment in Hillsborough County because she could not pay rent and her daughter Stacy Sanzone made no attempts to pay. Relatedly, any notices sent by Chase regarding the monthly account statements, ATM withdrawals, debit card transactions, and fraudulent check deposits were mailed to the address Ms. Letters was evicted from during her Incarceration Period, therefore they were never received.

53.     Ms. Wakefield notified Chase that her sister was incarcerated and could not receive any statements at the address provided.

54.     After Ms. Wakefield returned to Pennsylvania, Chase informed her that the Power of Attorney executed in Florida was not acceptable according to Chase.

55.     Ms. Letters currently lives in Palm Beach County, Florida.

56.     After the Incarceration Period, Ms. Letters began the long and arduous process of contacting Chase and Wells Fargo to recoup the fraudulently withdrawn funds.

57.     In September of 2022, Fidelity froze the account where the fraudulently withdrawn checks originated from; the freeze was not lifted until March of 2023. During this time, Ms. Letters lost out on the interest she could have gained on the frozen amounts.

58.     On or about October 5, 2022, Ms. Letters withdrew about $10,000 from her QRDO account and placed it into her Chase account so she could use those funds for daily living expenses and other recurring obligations.

59.     On or about October 25, 2022, Wells Fargo withdrew the amounts that

comprise the first two fraudulent checks from Plaintiff's Chase account with her authorization.

60.     On or about October 26, 2022, Ms. Letters visited a Chase branch in person to dispute the withdrawals for $2,308.54 and $4,608.51: Ms. Letters was provided a printed copy of the email exchange between two Chase employees who were involved in the investigation of each fraudulent check.



61.     On October 28, 2022, Ms. Letters contacted Wells Fargo to share the information she provided to Chase just a few days earlier as represented by the image above.

62.     On October 31, 2022, Ms. Letters contacted the Palm Beach County Sheriff's Office and completed a police report, which generally summarized the unauthorized transactions during the Incarceration Period. A portion of the Police Report is represented by the image below.

ON 10-31-22 AT APPROXIMATELY 1334 HOURS, SALLY LETTERS CONTACTED THE SHERIFF'S OFFICE IN REFERENCE TO IDENTITY THEFT.

FROM JANUARY 2022 TO JULY OF 2022, LETTERS WAS INCARCERATED IN HILLSBOROUGH COUNTY, FLORIDA. HER DAUGHTER, STACIE SANZONE, LIVED AT HER RESIDENCE. LETTERS EXPLAINED HER DAUGHTER GOT BACK TOGETHER WITH HER BOYFRIEND, RYAN MIRABITO. BOTH HAVE A HISTORY OF DRUG USE. WHILE INCARCERATED, LETTERS STATED SHE WAS EVICTED FROM HER RESIDENCE IN HILLSBOROUGH BECAUSE HER DAUGHTER DIDN'T PAY THE RENT. SHE HAS SINCE MOVED TO PALM BEACH COUNTY.

LETTERS HAS LEARNED HER DAUGHTER HAS USED HER IDENTITY TO CONDUCT SEVERAL FINANCIAL TRANSACTIONS. ACCORDING TO LETTERS, WHILE INCARCERATED, SANZONE OBTAINED CHASE DEBIT CARDS IN HER NAME. LETTERS HAD ALSO RECEIVED CHECKS IN THE MAIL WHILE INCARCERATED. SANZONE FORGED HER MOTHER'S SIGNATURE AND TOOK THE FUNDS.

A MAJORITY OF THE INCIDENTS OCCURRED WHILE LETTERS WAS A RESIDENT OF HILLSBOROUGH COUNTY. THIS REPORT WAS INITIATED TO ASSIST HILLSBOROUGH AND REPORTING PURPOSES FOR THE FINANCIAL INSTITUTIONS. I ENCOURAGED LETTERS TO TAKE THE DOCUMENTS REGARDING THE INCARCERATION TO THE BANK.

NOTHING FURTHER.

63.    Contemporaneously with Ms. Letters' recent $8,000 deposit, Chase was investigating the $8,000 fraud claim she submitted and denied it.  Ms. Letters was fearful that Chase would withdraw any remaining money following the money that had been returned to Wells Fargo, so she withdrew it and placed in a Bank of America account; a $25 balance was left so the account would not be overdrawn.

64.    On November 19, 2023, just as Ms. Letters assumed, Chase withdrew the $8,000 which resulted in an account balance of -$7,995.

65.    On November 23, 2022, Ms. Letters contacted the Wells Fargo executive office via phone and then email to dispute the fraudulent checks that were withdrawn from her QRDO and 401k accounts.

66.    From November 23, 2022 to January 5, 2023, Ms. Letters continued calling and emailing a representative from Wells Fargo to address the three fraudulent checks that were deposited into her Chase account and withdrawn from

her QRDO and 401k accounts. While Ms. Letters was communicating with Wells Fargo she submitted a complaint to the Better Business Bureau, Case No.: 06202212079951147.

67.    On January 12, 2023, Wells Fargo sent a letter to Plaintiff stating the first two fraudulent checks for $2,308.54 and $4,608.51 were paid back to Fidelity as of November 29, 2022; the third check was unable to be located according to Wells Fargo. The information in the January 12, 2023 letter from Wells Fargo is represented in part by the image below



68.     The two checks that were allegedly returned to Fidelity from the Chase account were actually funds that Ms. Letters deposited on October 5, 2022 after making the withdrawal from her QRDO account. *See supra* ¶58.

69.     From September 2022 through approximately March or April 2023, Fidelity and/or Wells Fargo froze the amounts that totaled the three fraudulent checks due to "irregularities in deposits."

70.     Wells Fargo and/or Fidelity have issued checks to Ms. Letters that total the first two fraudulent checks for $2,308.54 and $4,608.51, however, these checks were withdrawn from funds  the QRDO account, therefore she has not been made whole despite what Wells Fargo has maintained in communications with Plaintiff.

71.     Plaintiff disputed the fraudulent checks with Wells Fargo, who is the issuer of the checks from the  QRDO and 401k accounts, but Wells Fargo (on behalf of Fidelity) has refused to treat the transactions as unauthorized.

72.     Wells Fargo's attempts, on behalf of Fidelity, to hold Plaintiff liable directly violates the EFTA which protects consumers from liability for unauthorized transfers.

73.     Ms. Letters requested copies of the documents Wells Fargo and Fidelity relied on in denying her claims of unauthorized electronic transfers.

74.     Based on information and belief, neither Wells Fargo nor Fidelity ever mailed the requested documents to Plaintiff.

75.     Accordingly, Wells Fargo and/or Fidelity violated the EFTA by denying claims of unauthorized transactions without providing any written explanation

and without providing the documents reviewed during the investigation to the consumer.

76.    Plaintiff never authorized the fraudster, Stacy Sanzone, to withdraw or transfer money from her account in any form contemplated by the EFTA.

77.    Plaintiff did not act in concert with Stacy Sanzone.

78.    Plaintiff was clearly incarcerated when the unauthorized transfers took place on her Fidelity and Chase accounts.

79.    Nevertheless, Wells Fargo (on behalf of Fidelity) declined all the fraud claims, contending that the fraudulent transfers were authorized.

80.    Neither Wells Fargo nor Fidelity delivered or mailed Plaintiff an explanation of the reasons for its determinations.

81.    Similarly, Chase never delivered or mailed Plaintiff an explanation of the reasons for its determinations.

82.    Pursuant to the EFTA, liability for unauthorized use is sharply limited.

83.    Specifically, 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> a.  $50; or
>
> b.  the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that

an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

84.     Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

85.     Chase's relationship with Plaintiff is subject to a Deposit Account Agreement ("Deposit Agreement").

86.     With respect to Chase, The Deposit Agreement provides, among other things "If you tell us within two business days, you can lose no more than $50 if someone used your card, PIN or code without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your card, PIN or code and we can prove we could have stopped unauthorized transactions if you had told us, you could lose as much as $500. If your statement shows electronic funds transfers that you did not make, tell us right away. If you do not tell us within 60 days after the statement was sent or otherwise made available to you, you may not get back any money you lost after the 60 days if we can prove that we could have prevented the transactions if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, let us know. We will extend the time periods."

87.     Plaintiff's "good reason" for being unable to contact Chase about any unauthorized transactions within the 60-day period described by the Deposit Agreement was the Incarceration Period.

88.     Additionally, Chase knew Plaintiff was not living at her Hillsborough

County address because Heather Wakefield informed Chase she was incarcerated.

89.     Yet Plaintiff's monthly statements where the fraudulent transactions appeared and certain communications denying any claims of fraud continued to be mailed to her Hillsborough County address until approximately October 26, 2022.

90.     Wells Fargo's policies and practices of: failing reasonably investigate unauthorized transfers resulting from fraudulent access to a consumer's account; failing to send a consumer an explanation of its findings within 3 business days after the conclusion of its investigation; failing to promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur; and holding consumers responsible for more than the $50 maximum are violations the EFTA.

91.     Plaintiff has experienced anxiety, anger, and frustration over losing access to the funds in her Chase checking account and a feeling that she has been completely ignored by Wells Fargo.

92.     Chase's policies and practices of: failing reasonably investigate unauthorized transfers resulting from fraudulent access to a consumer's account; failing to send a consumer an explanation of its findings within 3 business days after the conclusion of its investigation; failing to promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur; and holding consumers responsible for more than the $50 maximum are violations the EFTA.

93.     On January 24, 2023, Chase sent a checking account statement to Ms. Letters showing a negative balance of $8,007.39 "write-off balance," which Ms. Letters disputed in writing on or about March 10, 2023. A redacted copy of Ms. Letters' January 24, 2023 dispute to Chase is attached hereto as Exhibit "B."

94.     After receiving the January 24, 2023 dispute, Chase contacted Ms. Letters and she requested to be sent a response in writing, but Chase has not responded in writing.

95.     Plaintiff has experienced anxiety, anger, and frustration over losing access to the funds in her Chase checking account and a feeling that she has been completely ignored by Chase.

### FACTUAL ALLEGATIONS COMMON TO FCCPA CLAIMS AGAINST CHASE

96.     Plaintiff incorporates by reference her allegations in paragraphs 23 – 30, 38, 40 – 50, and 62 - 64 as if fully stated herein.

97.     On January 28, 2023, Chase sent Ms. Letters a communication in an attempt to collect a debt in the amount of $8,007.39. A redacted copy of the January 28, 2023 letter is represented by the image below.



98.     Chase has ignored Ms. Letters' claims of identity theft which occurred during her Incarceration Period and has continued its attempts to collect from her despite having direct knowledge of the source of the unauthorized transactions.

99.     Because Chase has ignored Ms. Letters' disputes and claims of identity theft and made attempts to collect on a fraudulent balance, Chase is liable to Plaintiff for violations of FCCPA.

## COUNT I – VIOLATIONS OF 15 U.S.C. §1693f(e) AGAINST WELLS FARGO

100.    Plaintiff incorporates by reference paragraphs 1, 3 – 10, 12 – 22, and 31 – 36, 40 – 45, 55 – 80, 90, and 91 as if fully set forth herein.

101.    The EFTA and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

102.    The EFTA and Regulation E apply to electronic fund transfers that

authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

103.     Regulation E section 1005.2(i) defines financial institutions under EFTA and Regulation E to include banks, savings associations, credit unions, and: any other person that directly or indirectly holds an account belonging to a consumer. *See* 12 C.F.R. 1005.2(i).

104.     Wells Fargo either directly or indirectly held the Fidelity Account belonging to Plaintiff because it issued fraudulent checks and communicated with Plaintiff during the period she was disputing the transactions.

105.     At all times relevant hereto, Wells Fargo acted as the agent for Fidelity in all respects when it comes to the requirements of the EFTA and the funds that were illegally withdrawn.

106.     Plaintiff's contacts with Wells Fargo where she explained that he did not authorize the transfers constituted notification to Wells Fargo of an error under § 1693f.

107.     As a result of a notification complying with § 1693f, Wells Fargo was obligated to investigate the errors and determine whether any errors had occurred.

108.     After the investigation, the financial institution must determine whether an error has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. *Id.*

109.     If a financial institution provides a provisional credit in the first 10 days for the amount disputed, then the financial institution is afforded forty-five (45)

days after receipt of notice of error to investigate. *Id.* § 1693f(c).

110.　Under the EFTA, an error includes "an unauthorized electronic fund transfer." *Id.* § 1693f(f).

111.　Because Plaintiff did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under §1693a(12).

112.　These transactions do not qualify for the exception under §1693a(12)(A) because Plaintiff did not "furnish" the fraudster with access to any of her accounts; instead, as provided in 12 C.F.R. § 1005.2, the transfers were initiated by a person who obtained access from Plaintiff through fraud and therefore constitute unauthorized electronic fund transfers. *See, e.g.,* Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

113.　As a direct and proximate result of Wells Fargo's violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

114.　Because Wells Fargo did not provisionally recredit Plaintiff's account within the 10-day period specified in §1693f(c) and did not make a good faith investigation of the alleged error, Defendant's conduct violates §1693f(e), entitling Plaintiff to treble damages.

115.　Additionally, because Wells Fargo did not have a reasonable basis for believing that Plaintiff's account was not accessed in error, Wells Fargo's conduct violates § 1693f(e), entitling Plaintiff to treble damages.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a. Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b. Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c. Treble damages pursuant to 15 U.S.C. § 1693f(e);

d. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e. All other relief the Court deems just and proper.

## COUNT II – VIOLATIONS OF 15 U.S.C. §1693f(d) AGAINST WELLS FARGO

116. Plaintiff incorporates by reference paragraphs 1, 3 – 10, 12 – 22, and 31 – 36, 40 – 45, 55 – 80, 90, and 91 of this Complaint as if fully set forth herein.

117. Plaintiff's call to Wells Fargo in July of 2022 when she explained that he did not authorize the transfers constituted notification to Wells Fargo of an error under § 1693f.

118. Under the EFTA, an error includes "an unauthorized electronic fund transfer." *Id.* § 1693f(f).

119. Because Plaintiff did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under §1693a(12).

120. As a result of a notification complying with § 1693f, Wells Fargo was obligated to investigate the error and determine whether an error has occurred.

121. When Wells Fargo determined that an error did not occur, it was obligated to deliver or mail Plaintiff an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of Plaintiff promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. § 1693f(d).

122. Wells Fargo has never delivered or mailed Plaintiff any materials related to its determination that an error did not occur.

123. As reflected in the drafting of §1693f(d), a critical part of a good faith investigation under the EFTA is informing the subject of the investigation of the reasons for the finding and the documents relied upon in making determinations.

124. Wells Fargo's failure to do so prevents accountholders like Plaintiff from learning the full basis for Wells Fargo's decision, potentially limiting their ability to successfully resolve their dispute, pursue their full rights, obtain additional information about the allegedly unauthorized charges, and fully understand the reasons for the adverse resolution of the dispute.

125. A consumer's right to the notice in question—*i.e.* notice of the right to examine the documents relied upon by the Bank in making the adverse determination—is a procedural right which protects plaintiff's concrete interests. Violation of that right presents a "risk of real harm" to that concrete interest.

126. Failure to comply with §1693f(d)'s requirement of the documents used in the investigation entitles Plaintiff to statutory damages pursuant to § 1693m(a)

as well as attorney's fees and costs.

127.    For the reasons explained above, Wells Fargo's failure to provide the reasons for its error determinations also constitutes a failure to make a good faith investigation, a violation of § 1693f(e), entitling Plaintiff to treble damages.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.    Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b.    Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c.    Treble damages pursuant to 15 U.S.C. § 1693f(e);

d.    Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e.    All other relief the Court deems just and proper.

### COUNT III – VIOLATIONS OF 15 U.S.C. §1693g AGAINST WELLS FARGO

128.    Plaintiff incorporates by reference the allegations in paragraphs 1, 3 – 10, 12 – 22, and 31 – 36, 40 – 45,  55 – 80, 90, and 91 as if fully stated herein.

129.    The EFTA places sharp limitations on consumer liability for unauthorized transactions. § 1693g.

130.    By holding Plaintiff responsible for the full amount of the unauthorized transfer rather than the limits set forth by § 1693g(a), Wells Fargo has violated the EFTA.

131.    Failure to comply with the limits set forth by §1693g(a) entitles Plaintiff

270d0a7127e88c88

to statutory damages pursuant to § 1693m(a) as well as attorney's fees and costs.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.    Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b.    Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c.    Treble damages pursuant to 15 U.S.C. § 1693f(e);

d.    Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e.    All other relief the Court deems just and proper.

## COUNT IV – VIOLATIONS OF  15 U.S.C. §1693f(d) AGAINST CHASE

132.    Plaintiff incorporates by reference her allegations in paragraphs 1 – 22, 31 – 56, 58 - 64,  67, 68, 78, 81 – 89, and 92 - 95 as if fully stated herein.

133.    The EFTA and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

134.    During her Incarceration Period, Plaintiff notified Chase of the unauthorized transactions through the Power of Attorney granted to her sister, Heather Wakefield.

135.    Additionally, Plaintiff notified Chase of the unauthorized transactions herself after her Incarceration Period.

136.    As a result of a notification complying with § 1693f, Chase was obligated to investigate the errors when notified through Plaintiff's Power of Attorney, or Plaintiff herself, and determine whether any errors had occurred.

137.     When Chase determined that an error did not occur, it was obligated to deliver or mail Plaintiff an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of Plaintiff promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. § 1693f(d).

138.     Chase never notified Plaintiff of her right to request reproductions of all documents relied on to conclude that no error occurred.

139.     As reflected in the drafting of § 1693f(d), a critical part of a good faith investigation under the EFTA is informing the subject of the investigation of the reasons for the finding and providing the subject with notice of the right to examine the documents relied upon in making determinations.

140.     Chase's failure to do so prevents accountholders like Plaintiff from learning the full basis for Chase's decision, potentially limiting their ability to successfully resolve their dispute, pursue their full rights, obtain additional information about the allegedly unauthorized charges, and fully understand the reasons for the adverse resolution of the dispute.

141.     A consumer's right to the notice in question—*i.e.* notice of the right to examine the documents relied upon by the Bank in making the adverse determination—is a procedural right which protects plaintiff's concrete interests. Violation of that right presents a "risk of real harm" to that concrete interest.

142.     Failure to comply with § 1693f(d)'s requirement of notice entitles Plaintiff to statutory damages pursuant to § 1693m(a) as well as attorney's fees and costs.

143.     For the reasons explained above, Chase's failure to provide the reasons

for its error determinations also constitutes a failure to make a good faith investigation, a violation of § 1693f(e), entitling Plaintiff to treble damages.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.     Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b.     Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c.     Treble damages pursuant to 15 U.S.C. § 1693f(e);

d.     Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e.     All other relief the Court deems just and proper.

### COUNT V - 15 U.S.C. 1693f(e)
### AGAINST CHASE

144.    Plaintiff incorporates by reference her allegations in paragraphs 1 – 22, 31 – 56, 58 - 64,  67, 68, 78, 81 – 89, and 92 - 95 as if fully stated herein.

145.    The EFTA and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

146.    During her Incarceration Period, Plaintiff notified Chase of the unauthorized transactions through the Power of Attorney granted to her sister, Heather Wakefield.

147.    Additionally, Plaintiff notified Chase of the unauthorized transactions herself after her Incarceration Period.

148.    As a result of a notification complying with § 1693f, Chase was obligated to investigate the errors when notified through Plaintiff's Power of Attorney, or Plaintiff herself, and determine whether any errors had occurred.

149.    After the investigation, the financial institution must determine whether an error has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. *Id.*

150.    If a financial institution provides a provisional credit in the first 10 days for the amount disputed, then the financial institution is afforded forty-five (45) days after receipt of notice of error to investigate. *Id.* § 1693f(c).

151.    Under the EFTA, an error includes "an unauthorized electronic fund transfer." *Id.* § 1693f(f).

152.    Because Plaintiff did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under §1693a(12).

153.    These transactions do not qualify for the exception under §1693a(12)(A) because Plaintiff did not "furnish" the fraudster with access to any of her accounts; instead, as provided in 12 C.F.R. § 1005.2, the transfers were initiated by a person who obtained access from Plaintiff through fraud and therefore constitute unauthorized electronic fund transfers. *See, e.g.,* Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

154.    As a direct and proximate result of Chase's violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as

attorney's fees and costs.

155.    Because Defendant did not provisionally recredit Plaintiff's account within the 10-day period specified in §1693f(c) and did not make a good faith investigation of the alleged error, Defendant's conduct violates §1693f(e), entitling Plaintiff to treble damages.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.    Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b.    Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c.    Treble damages pursuant to 15 U.S.C. § 1693f(e);

d.    Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e.    All other relief the Court deems just and proper.

### COUNT VI – VIOLATIONS OF 15 U.S.C. §1693f(f)(1) AGAINST CHASE

156.    Plaintiff incorporates by reference her allegations in paragraphs 1 – 22, 31 – 56, 58 - 64,  67, 68, 78, 81 – 89, and 92 - 95 as if fully stated herein.

157.    The EFTA and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

158.    During her Incarceration Period, Plaintiff notified Chase of the unauthorized transactions through the Power of Attorney granted to her sister,

Heather Wakefield.

159.    Additionally, Plaintiff notified Chase of the unauthorized transactions herself after her Incarceration Period.

160.    Plaintiff's communications through the Power of Attorney and by Plaintiff herself qualified as notification of an error under §1693f.

161.    Despite being notified of the unauthorized transactions, Chase allowed multiple unauthorized electronic transfers to take place in violation of §1693f(f)(1), which caused Plaintiff's actual damages in multiple forms such as her account being overdrawn subjecting her to overdraft fees, made it difficult to meet her daily living expenses, and comply with existing payment or credit obligations.

162.    Because Plaintiff did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under §1693a(12).

163.    These transactions do not qualify for the exception under §1693a(12)(A) because Plaintiff did not "furnish" the fraudster with access to any of her accounts; instead, as provided in 12 C.F.R. § 1005.2, the transfers were initiated by a person who obtained access from Plaintiff through fraud and therefore constitute unauthorized electronic fund transfers. See, e.g., Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

164.    As a direct and proximate result of Chase's violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

165.     Because Chase did not provisionally recredit Plaintiff's account within the 10-day period specified in §1693f(c) and did not make a good faith investigation of the alleged error, Defendant's conduct violates §1693f(e), entitling Plaintiff to treble damages.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.     Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b.     Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c.     Treble damages pursuant to 15 U.S.C. § 1693f(e);

d.     Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e.     All other relief the Court deems just and proper.

### COUNT VII – 15 U.S.C. §1693f(f)(4) AGAINST CHASE

166.     Plaintiff incorporates by reference her allegations in paragraphs 1 – 22, 31 – 56, 58 - 64,  67, 68, 78, 81 – 89, and 92 - 95  as if fully stated herein.

167.     The EFTA and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

168.     During her Incarceration Period, Plaintiff notified Chase of the unauthorized transactions through the Power of Attorney granted to her sister, Heather Wakefield.

169.    Additionally, Plaintiff notified Chase of the unauthorized transactions herself after her Incarceration Period.

170.    Plaintiff's communications through the Power of Attorney and by Plaintiff herself qualified as notification of an error under §1693f.

171.    Chase's continued failure to prevent unauthorized electronic transfers resulted in computational errors in Plaintiff's account in violation §1693f(f)(4), which caused Plaintiff actual damages in multiple forms such as her account being overdrawn subjecting her to overdraft fees, made it difficult to meet her daily living expenses, and comply with existing payment or credit obligations.

172.    Because Plaintiff did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under §1693a(12).

173.    These transactions do not qualify for the exception under §1693a(12)(A) because Plaintiff did not "furnish" the fraudster with access to any of her accounts; instead, as provided in 12 C.F.R. § 1005.2, the transfers were initiated by a person who obtained access from Plaintiff through fraud and therefore constitute unauthorized electronic fund transfers. *See, e.g.,* Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

174.    As a direct and proximate result of Chase's violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

175.    Because Chase did not provisionally recredit Plaintiff's account within

the 10-day period specified in §1693f(c) and did not make a good faith investigation of the alleged error, Defendant's conduct violates §1693f(e), entitling Plaintiff to treble damages.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.    Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b.    Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c.    Treble damages pursuant to 15 U.S.C. § 1693f(e);

d.    Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e.    All other relief the Court deems just and proper.

## COUNT VIII – VIOLATIONS OF FLA. STAT. §559.72(7) AGAINST CHASE

176.    Plaintiff incorporates by reference the allegations in paragraphs 1 – 11, 23 – 30, and 96 – 99 as if fully stated herein.

177.    The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc* at 1192 (citing Fla. Stat. § 559.552)).

178.    Plaintiff is a "consumer" as defined by Florida Statute §559.55(8) asserting claims against Chase as a "debt collector" within the meaning of Florida Statute §559.55(7).

179.    At all times relevant to this action, Chase is subject to and must abide by the law of State of Florida, including Florida Statute § 559.72.

180.    Chase violated Fla. Stat. §559.72(7) by "[w]illfully communicat[ing] with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

181.    Specifically, Chase has attempted to collect the negative balance of $8,000 from Plaintiff after being put on notice of the fraudulent transfers. *See Braun v. TD Bank, No.* 8:20-cv-2951-VMC-TGW (M.D. Fla. Mar. 23, 2021).

182.    "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2).

183.    As a result, of Chase's FCCPA violations Plaintiff suffered damages, including but not limited to, time spent addressing Defendant's illegal collection practices and emotional distress related to Defendant's attempts to collect amounts that are due to fraud.

WHEREFORE, Plaintiff requests this Court enters judgment in her favor and against Chase for:

a.    Actual damages;

b.    Statutory damages of $1,000;

c.    Punitive damages;

d.    attorneys' fees, litigation expenses and costs of the instant suit; and

e.    such other or further relief as the Court deems proper.

## <u>COUNT IX – VIOLATIONS OF FLA. STAT. §559.72(9)<br>AGAINST CHASE</u>

184.    Plaintiff incorporates by reference the allegations in paragraphs 1 – 11, 23 – 30, and 96 – 99 as if fully stated herein.

185.    At all times relevant to this action, Chase is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

186.    Chase violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate or asserting the existence of some other legal right when Defendant knew that right did not exist.

187.    Chase's attempts to collect the negative balance of $8,000+ on Plaintiff's account, whether in writing, by phone, and/or electronic violated §559.72(9) because Chase knew Plaintiff was the victim of fraudulent transfers that she did not authorize.

188.    "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable

attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2).

189.     As a result of Chase's FCCPA violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant's illegal collection practices and emotional distress related to Defendant's attempts to collect amounts that are due to fraud.

WHEREFORE, Plaintiff requests this Court enters judgment in her favor and against Chase for:

a.     Actual damages;

b.     Statutory damages of $1,000;

c.     Punitive damages;

d.     attorneys' fees, litigation expenses and costs of the instant suit; and

e.     such other or further relief as the Court deems proper.

## COUNT X - BREACH OF CONTRACT AGAINST CHASE

190.     Plaintiff incorporates by reference the allegations in paragraphs 1 – 22, 31 – 56, 58 - 64,  67, 68, 78, 81 – 89, and 92 – 95 as if fully stated herein.

191.     The Deposit Agreement provides, among other things "[i]f you tell us within two business days, you can lose no more than $50 if someone used your

card, PIN or code without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your card, PIN or code and we can prove we could have stopped unauthorized transactions if you had told us, you could lose as much as $500."

192.    By failing to limit Plaintiff's losses to those amounts set forth in the Deposit Agreement, Defendant materially breached the Deposit Agreement.

193.    As a direct and proximate result of Defendant's breach of the Deposit Agreement, Plaintiff lost more funds than she should have as a result of unauthorized transfers, and he is entitled to an award of actual damages.

Dated: January 15, 2024

Respectfully Submitted,

**SHARMIN & SHARMIN, P.A.**

***/s/ Kevin Rajabalee, Esq.***
Fla. Bar. No. 119948
kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Direct: 561-296-9109
Fax: 844-922-1021
eiman@sharminlaw.com
*Attorneys for Plaintiff*